# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| SHERRY GOODMAN o/b/o B.S.M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 6:17-03356-DGK-SSA |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Sherry Goodman seeks judicial review of the Commissioner of Social Security's ("the Commissioner") denial of an application filed on behalf of her son, B.S.M., for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found B.S.M. had severe impairments of attention deficit/hyperactivity disorder ("ADHD"), adjustment disorder, developmental coordination disorder, diabetes mellitus type I, ankle and hamstring contracture, and obesity, but these impairments did not meet a listing or the functional equivalent of a listing because these conditions could be controlled through consistent care, thus he was not disabled.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

## Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed B.S.M.'s application for SSI benefits on March 17, 2014, alleging a disability onset date of January 22, 2014. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ.

The ALJ held a hearing on July 1, 2015, and then a second hearing on June 13, 2016, for the specific purpose of receiving testimony from an independent medical expert, Dr. Bradley Bradford, M.D., who is board certified in pediatric medicine. The business day before the hearing Plaintiff submitted additional medical records, but the ALJ's office was unable to get them to Dr. Bradford in time for the hearing.[1] The ALJ recognized this problem on the record and arranged for Dr. Bradford's testimony to be supplemented with post-hearing interrogatories which take these records into account. R. at 1104-10.

On September 28, 2016, the ALJ issued his decision finding B.S.M. is not disabled. The Appeals Council denied Plaintiff's request for review on September 14, 2017, leaving the ALJ's ruling as the Commissioner's final decision. Plaintiff has exhausted all of the administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

**Standard of Review**

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Substantial evidence is less than a preponderance, enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions.

---

[1] The hearing occurred in Springfield, Missouri. Dr. Bradford appeared by telephone from South Florida where he lives and works.

*Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

To be considered disabled within the meaning of the Act, a child (a person under age eighteen) must show a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which either lasts or can be expected to last for a continuous period of not less than twelve months. In making this determination, the Commissioner follows a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At step one, the Commissioner determines whether the child has engaged in substantial gainful activity. *Id*. § 416.924(b). If so, the child is not disabled; if not, the inquiry continues. At step two, the Commissioner determines whether the child's impairment, or combination of impairments, is "severe," which is defined as a slight abnormality or combination of slight abnormalities that causes more than minimal functional limitations. *Id*. § 416.924(c). If not, the applicant is considered not disabled; if so, the inquiry continues. At step three, the Commissioner determines whether the child has an impairment(s) that meets, or is medically or functionally equal in severity to, one of the Commissioner's listed impairments. *Id*. § 416.924(d). If so, and the impairment(s) meets the durational requirement of having lasted, or being expected to last, for a continuous twelve month period, disability is established. If not, the child is not disabled. *Id.*

If the ALJ finds a child's impairments do not meet or medically equal a listed impairment, the ALJ will assess all functional limitations caused by the child's impairments across six

"domains" of functioning to determine whether the functional limitations are disabling.[2] *Id*. § 416.926a. The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id*. § 416.926a(b)(1). The evaluation of age-appropriate functioning within each domain focuses on the child's abilities and limitations; where the child has difficulty; the quality of any limitations; and the kind, extent, and frequency of help that the child needs. *Id*. § 416.926a(b)(2). A finding of functional equivalence occurs when a child has an "extreme" limitation in one domain of functioning or "marked" limitations in at least two domains. *Id*. § 416.926a(e).[3]

In the present case, the ALJ found that B.S.M. did not have an impairment or combination of impairments that met a listing, nor were his impairments functionally equivalent to a listing because "the primary issue causing the severity of the claimant's medical conditions is parental lack of supervision of the claimant, lack of diligence of care, and non-compliance with medical recommendations for treatment." R. at 30. The ALJ found that if B.S.M. received appropriate treatment, he would have a less than marked limitation in each of the six domains of functioning. R. at 37-42.

Plaintiff contends the Court should reverse the Commissioner's decision because the ALJ erred in weighing Dr. Bradford's testimony. Plaintiff notes that Dr. Bradford's interrogatory answers submitted after the hearings opine that B.S.M. met or equaled Listing 112.11 based upon his diabetes, orthopedic issue, ADHD, sensory issues, and adjustment disorder. He also opined

---

[2] "Domains" are "broad areas of functioning intended to capture all of what a child can or cannot do." SSR 09-4p.

[3] "Extreme" denotes an impairment that very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. "Marked" denotes an impairment that seriously interferes with the ability for independently initiating, sustaining, or completing activities. 20 C.F.R. § 416.926a(e).

4

that B.S.M. was markedly impaired in five of the six domains. Plaintiff argues Dr. Bradford's opinion is based on all the evidence and is entitled to special weight because he is a specialist in pediatric medicine, and the ALJ's decision to discount his opinion is "a blatant, willful, deliberate misstatement or misrepresentation of facts." Pl.'s Br. at 10. Plaintiff characterizes the ALJ's findings concerning lack of supervision, lack of diligence and care, and non-compliance as a "blame the Mother" defense. Plaintiff also accuses the ALJ of failing to provide Dr. Bradford with all the medical records prior to the hearing.

Plaintiff's anger is misplaced. While this is a frustrating case, the ALJ did not err and his decision is supported by substantial evidence on the record.

To begin, the Court finds the ALJ committed no errors in providing medical records for Dr. Bradford's review. On the contrary, given that the Commissioner received some of these records—exhibits from six different treatment providers, some of which were almost a year old—the *day before* the hearing, the Court finds the ALJ's efforts were entirely reasonable. His office attempted to send the documents to the doctor before the hearing. R. at 81-82. When this was unsuccessful, the ALJ recognized the problem on the record, discussed it with the parties, got the documents to the doctor, and then arranged for the doctor's revised opinion to be received into the record in the form of interrogatory answers. R. at 82, 1004-1010. It is clear from the record that Dr. Bradford received the documents, they were incorporated into his interrogatory answers, and the ALJ read and carefully considered these answers. R. at 30, 1004-1010 (discussing the post-hearing interrogatories).

The substance of the ALJ's decision is also supported by the record. As the ALJ noted, there is overwhelming evidence in the record that an acute lack of parental care and supervision precluded effective treatment of B.S.M.'s impairments and resulted in noncompliance with

5

treatment. R. at 32-34. For example, the doctor treating B.S.M.'s diabetes, Dr. David Schwartz, M.D., reported that the family nurse practitioner who referred B.S.M. to him had asked the family "to come directly to the hospital for direct admission." R. at 768. Even so, "the family was very delayed in coming, perhaps being admitted near midnight on January 22, 2014: The mother indicated that they had stopped to get Subway sandwiches because they thought that would be Brandon's 'last regular meal.' She also indicated that there had been a flat tire." R. at 768.[4] The doctor's notes also suggest that when it comes to managing B.S.M.'s diabetes, the child might be more responsible than his mother: "The impression from the team is that Brandon has really begun to understand the new responsibilities that he has. In fact, he may be leading the mother at this point." R. at 771. On another visit, Dr. Schwartz observed the child had "[p]oor adherence to his various prescribed medical plans," and that even though his glucose levels were reasonable, his prognosis for good control was guarded "given the interactions and supervision that I think I see." R. at 33, 909. At another visit, dietician Roxanne Mason noted that Plaintiff's mother was having trouble with organization, filling out glucose logs appropriately, and keeping appointments. R. at 33, 857. Plaintiff was also discharged from physical therapy for ankle contractures because of lack of compliance and poor attendance, leading Dr. Schwartz to write that "[t]his active 8 year old is NOT to be 'in charge'" and the noncompliance "suggests a parenting issue." R. at 33, 913-14.

---

[4] The Court notes Ms. Goodman attempted to rebut this evidence by submitting a short letter. In it, she states that after she had been told to bring B.S.M. to the hospital, she called and was told by the hospital his room was not ready and that it would be fine if she fed him something. R. at 713. She also states that she did not know then that type I diabetes in children was so serious, that she has been diagnosed with bi-polar disorder, and that she is still learning how to cope with her son's diabetes. Id. Assuming all of this is true, however, nothing in the record suggests her bi-polar diagnosis is responsible for her parenting deficits. More importantly, Plaintiff does not cite any legal authority (nor can the Court find any) suggesting that even if her bipolar disorder were at least partly responsible for the noncompliance with treatment, this somehow authorized the ALJ to overlook the noncompliance and award benefits.

After reading the treating doctors' reports, Dr. Bradford opined during the hearing that the level of parental involvement in caring for B.S.M.'s medical condition was "inadequate." R. at 87. "I think we have what appears to be a deficit in the 24 hour supervision required for this youngster's diabetes. This is only a ten year-old." R. at 88. He noted, "A ten year-old cannot manage diabetes. It would be a terrible outcome. I'll leave it at that. So, this is a youngster who needs that supervision from the parents. . . . The work has to be done at home." R. at 92. He also testified that, other than the noncompliance caused by the lack of parental supervision, this was a "normal situation with a diabetic child." R. at 101.

The ALJ discounted Dr. Bradford's subsequent interrogatory answers that B.S.M. met a listing and was markedly impaired in five domains of functioning. R. at 32-42. The ALJ did not discount Dr. Bradford's observations about the seriousness of B.S.M.'s impairments. Rather, he rejected the interrogatories' conclusion about the ultimate issue, reasoning nothing in the doctor's interrogatory answers changed his previous testimony that the child's health would improve if properly cared for.

This finding is supported by the record and the caselaw. *See Chaney v. Colvin*, 812 F.3d 672, 679 (8th Cir. 2016) (holding a claimant's noncompliance can constitute evidence that is inconsistent with even a treating physician's opinion and so is grounds to discount the physician's opinion); *Collins v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003) (finding evidence suggesting that when the child took his prescribed medication, his functioning was adequate, thus his impairments were controllable and did not support a finding of total disability). Consequently, there was no error.

**Conclusion**

The Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   October 3, 2018            /s/ Greg Kays
                                    GREG KAYS, CHIEF JUDGE
                                    UNITED STATES DISTRICT COURT